# UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| DAVID SILVER, Individually and On Behalf of All Others Similarly Situated, )<br>)<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>MOLSON COORS BREWING COMPANY, )<br>PETER H. COORS, W. LEO KIELY III, )<br>CHARLES M. HERINGTON, FRANKLIN )<br>W. HOBBS, RANDALL OLIPHANT, )<br>PAMELA PATSLEY, WAYNE SANDERS, )<br>ALBERT C. YATES, TIMOTHY V. WOLF, )<br>PETER SWINBURN, DAVID G. BARNES )<br>AND PETER M.R. KENDALL, )<br>)<br>Defendants. )| **CIVIL ACTION NO.**<br><br>CLASS ACTION COMPLAINT<br><br><br>**JURY TRIAL DEMANDED** |

Plaintiff, David Silver ("Plaintiff"), individually and on behalf of all other persons similarly situated, by his undersigned attorneys, for his complaint against defendants, alleges the following based upon personal knowledge as to himself and his own acts, and information and belief as to all other matters, based upon, inter alia, the investigation conducted by and through his attorneys, which included, among other things, a review of the defendants' public documents, conference calls and announcements made by defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Molson Coors Brewing Company ("Molson Coors" or the "Company"), securities analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

1

## NATURE OF THE ACTION

1.     This is a federal class action on behalf of: (i) former shareholders of Molson Inc. ("Molson") who received shares of Molson Coors (NYSE: TAP) as a result of the February 9, 2005 merger (the "Merger") of Molson by and into the Adolph Coors Company ("Coors"); (ii) open market purchasers of the common stock of Coors from July 22, 2004 to February 9, 2005, inclusive; and (iii) open market purchasers of the common stock of the Company, following completion of the merger between Molson and Coors on or about February 9, 2005 to April 27, 2005, inclusive, (the "Class Period") seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2.     The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act, (15 U.S.C. §§ 78j(b) and 78t(a)), and Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5).

3.     This Court has jurisdiction over the subject matter of this action pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. § 1331.

4.     Venue is proper in this Judicial District pursuant to §27 of the Exchange Act, 15 U.S.C. § 78aa and 28 U.S.C. § 1391(b).

5.     In connection with the acts, conduct and other wrongs alleged in this complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6.      Plaintiff, David Silver, as set forth in the accompanying certification, which is incorporated by reference herein, purchased Molson Coors securities at artificially inflated prices during the Class Period and has been damaged thereby.

7.      Defendant Molson Coors is a corporation organized under the laws of the state of Delaware with its principal place of business located at 311 Tenth Street, Golden, Colorado, and with its Canadian executive offices located at 1555 Notre Dame Street East, Montreal, Quebec, Canada.  Molson Coors Brewing Company, formerly Adolph Coors Company, is a holding company engaged in the manufacturing, marketing and selling of malt beverage products through its principal subsidiaries, Coors Brewing Company, operating in the United States, and Coors Brewers Limited, operating in the United Kingdom.  On February 9, 2005, Adolph Coors Company merged with Molson Inc.  In connection with the Merger, Adolph Coors Company became the parent of the merged company and changed its name to Molson Coors Brewing Company.  Molson sells its beer in Canada, Brazil and the United States. Molson has five breweries in Canada and eight breweries in Brazil, and distributes over 75 owned or licensed brands of beer and alcohol products.

8.      Defendant Peter H. Coors ("P. Coors") was, during the Class Period, Chairman of the board of directors of Coors.  P. Coors was instrumental in negotiating the Merger of Molson by and into the Company, and in the preparation, ratification and filing of the Proxy/Prospectus.

9.      Defendant W. Leo Kiely III ("Kiely") was, during the Class Period, President, Chief Executive Officer and a member of the board of directors of Coors.  Kiely was instrumental in negotiating the Merger and in the preparation, ratification and filing of the Proxy/Prospectus.

10.    Defendant Charles M. Herington ("Herington") was, during the Class Period, a member of the board of directors of Coors. Defendant Herington was instrumental in negotiating the Merger and in the preparation, ratification and filing of the Proxy/Prospectus.

11.    Defendant Franklin W. Hobbs ("Hobbs") was, during the Class Period, a member of the board of directors of Coors. Defendant Hobbs was instrumental in negotiating the Merger and in the preparation, ratification and filing of the Proxy/Prospectus.

12.    Defendant Randall Oliphant ("Olophant") was, during the Class Period, a member of the board of directors of Coors. Defendant Oliphant was instrumental in negotiating the Merger, and in the preparation, ratification and/or filing of the Proxy/Prospectus.

13.    Defendant Pamela Patsley ("Patsley") was, during the Class Period, a member of the board of directors of Coors. Defendant Patsley was instrumental in negotiating the Merger of Molson by and into the Company, and in the preparation, ratification and filing of the Proxy/Prospectus.

14.    Defendant Wayne Sanders ("Sanders") was, during the Class Period, a member of the board of directors of Coors. Defendant Sanders was instrumental in negotiating the Merger and in the preparation, ratification and filing of the Proxy/Prospectus.

15.    Defendant Albert C. Yates ("Yates") was, during the Class Period, a member of the board of directors of Coors. Defendant Yates was instrumental in negotiating the Merger and in the preparation, ratification and filing of the Proxy/Prospectus.

16.    Defendant Timothy V. Wolf ("Wolf") was, during the Class Period, Vice President and Chief Financial Officer of Coors, Global. Defendant Wolf was instrumental in negotiating the Merger and in the preparation and filing of the Proxy/Prospectus.

17.    Defendant Peter Swinburn ("Swinburn") was, during the Class Period, President of Coors Brewing Worldwide.  Swinburn was instrumental in negotiating the Merger and in the preparation and filing of the Proxy/Prospectus.

18.    Defendant David G. Barnes ("Barnes") was, during the Class Period, Vice President, Finance and Chief Financial Officer, Coors U.S Brewing Company.  Defendant Barnes was instrumental in negotiating the Merger, and in the preparation and filing of the Proxy/Prospectus.

19.    Defendant Peter M.R. Kendall ("Kendall") was, during the Class Period, Chief Executive Officer, Coors Brewers Limited.  Kendall was instrumental in negotiating the Merger, and in the preparation and filing of the Proxy/Prospectus.

20.    The defendants listed in ¶¶ 8-19 are collectively referred to hereinafter as the "Individual Defendants."  The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of Molson Coors's quarterly reports, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, i.e., the market.  Each defendant was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available to them but not to the public, each of these defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public and that the positive representations which were being made were then materially false and misleading.  The Individual Defendants are liable for the false statements pleaded herein, as those statements were

each "group-published" information, the result of the collective actions of the Individual Defendants.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

21.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased the securities of Molson Coors between December 9, 2004 and April 27, 2005, inclusive (the "Class Period"), and who were damaged thereby. Excluded from the Class are defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

22.    The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Molson Coors's securities were actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Molson Coors or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

23.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

24.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

25.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by defendants' acts as alleged herein;

(b)     whether statements made by defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Molson Coors; and

(c)     to what extent the members of the Class have sustained damages and the proper measure of damages.

26.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## SUBSTANTIVE ALLEGATIONS

### Background

27.     Molson Coors, formerly Coors, is a holding company engaged in the manufacturing, marketing and selling of malt beverage products through its principal subsidiaries, Coors Brewing Company ("CBC"), operating in the United States, and Coors Brewers Limited ("CBL"), operating in the United Kingdom. On February 9, 2005, Adolph Coors Company merged with Molson Inc. ("Molson"). In connection with the Merger, Coors became the parent of the merged company and changed its name to Molson Coors.

**Materially False And Misleading**
**Statements Issued During The Class Period**

28.    On July 22, 2004, Molson and Coors announced a definitive agreement to combine in a merger of equals, which would create a new company with the operating scale and balance sheet strength to take a leading role in the consolidating global brewing industry.  More specifically, Molson and Coors stated:

> **Molson and Coors Announce Merger of Equals to Create World's Fifth Largest Brewer**
>
> $6 billion company will have operating scale and financial strength to be major player in the consolidating global brewing industry
>
> Molson Coors Brewing Company will have established leading brands in key world markets, including the United States, Canada, the United Kingdom and Brazil
>
> Combination is expected to deliver substantial value to shareholders; approximately US$175 million in synergies identified
>
> MONTREAL, Canada and GOLDEN, Colorado, July 22, 2004 - Adolph Coors Company (NYSE: RKY) and Molson, Inc. (TSX: MOL.A) today announced a definitive agreement to combine in a merger of equals that will create a new company with the operating scale and balance sheet strength to take a leading role in the consolidating global brewing industry.
>
> With combined beer sales of 60 million hectoliters (51 million U.S. barrels), Molson Coors Brewing Company will be the world's fifth largest brewing company by volume, with pro-forma combined net sales of US$6.0 billion, EBITDA of US$1.0 billion and free cash flow of US$707 million for the twelve month period ended March 31, 2004. In addition, the combination is expected to generate approximately US$175 million in annualized synergies by 2007, with half of these benefits achieved within 18 months following completion of the merger. The transaction is expected to be earnings accretive1 to the shareholders of both companies within the first full year of combined operations.
>
> The transaction brings together Coors, founded in 1873, and the third-largest brewer in the U.S. with an 11 percent market share, and the second-largest brewer in the U.K. with a market share of

21 percent, with Molson, North America's oldest beer company, founded in 1786 and Canada's leading brewer with a 43 percent market share, and the third-largest brewer in Brazil, where it has an 11 percent market share.

"This transaction allows us to create a stronger company in a consolidating global industry while preserving Molson's rich heritage as North America's oldest beer company and Canada's leading brewer," said Eric H. Molson, chairman of Molson. "We are extremely pleased to be combining with Coors, one of the world's most respected brewers, in such a strategically compelling merger. We look forward to working together to realize the full potential of the new company."

Peter H. Coors, chairman of Coors, said: "I am very proud to see the company started by my great-grandfather more than 130 years ago combine with a company of Molson's caliber and heritage. This historic transaction combines 350 years of brewing excellence and will create a dynamic and competitive organization able to deliver long-term value to shareholders while continuing to be an important contributor to the communities in which we operate."

The combined company will have a well-established beverage portfolio that includes Coors Light, (the #7 beer brand worldwide), Molson Canadian (the #1 brand in Canada) and Carling (the #1 brand in the U.K.). In addition, Coors Original, Keystone, Aspen Edge, Zima XXX, Worthington's, Molson Ultra, Export, Molson Dry, Rickard's and Kaiser will be important brands in the portfolio. Additionally, the companies have, in various geographies, distribution and/or licensing agreements with other leading international brewers, including Heineken, Grupo Modelo, Grolsch, FEMSA, Foster's and SABMiller.

Management Structure and Board Composition

Molson Coors Brewing Company will draw on a talented group of leaders from both companies. Eric H. Molson will serve as chairman of the Board of the combined company. W. Leo Kiely III, currently chief executive officer of Coors, will be chief executive officer. Daniel J. O'Neill, currently chief executive officer of Molson, will be vice chairman, synergies and integration. Timothy V. Wolf, currently chief financial officer of Coors, will serve as chief financial officer of the combined company.

Leo Kiely, chief executive officer of Coors, stated, "Together, Molson and Coors will become the world's fifth largest brewer,

with the market and financial strength necessary to drive organic growth and compete more effectively in today's increasingly challenging global market. With EBITDA of US$1.0 billion before synergies, Molson Coors Brewing Company will have the financial flexibility to increase investment behind key brands while delivering value to shareholders. We also expect the geographic footprint of the combined company will facilitate increased operational and financial efficiency."

Molson Coors Brewing Company will have a 15-member Board of Directors, most of whom will be drawn from the existing Boards of both companies. It will be composed of five members nominated by Molson family Board members, five members nominated by Coors family Board members and three directors elected by the company's non-voting shareholders. Leo Kiely and Daniel J. O'Neill will also be directors. Nine members of the company's Board of Directors will be independent of management and the controlling shareholders.

The company will have executive headquarters in Denver, Colorado, and Montreal, Quebec. The company's operations in Canada will be managed from Toronto, Ontario; operations in the U.S. from Golden, Colorado; operations in the U.K. from Burton-on-Trent, England; and operations in Brazil from São Paulo, Brazil.

Synergies and Cost Savings

The companies intend to establish an Office of Synergies and Integration to facilitate the development and implementation of plans to achieve the expected benefits of the transaction. The Office will be responsible for the realization of cost savings and other synergies, including the alignment of related capital expenditures, by applying best practices and global benchmarking. The Office will be chaired by Daniel J. O'Neill and will also include Eric Molson and Leo Kiely.

"In my new role, my responsibility will be to deliver the identified synergies, unlock additional opportunities and lead the teams that have the most past experience in making this happen. The merger represents a transaction that will be difficult to match given the large value of synergies and the ability to reinvest additional synergies above the US$175 million to drive top-line sales growth," said Daniel J. O'Neill, president and chief executive officer of Molson Inc. "In addition, a merger with Coors allows our Canadian unit to secure the rights to sell and distribute the Coors

Light brand, which might not be the case in an alternative transaction."

The combined company expects to achieve annualized synergies of approximately US$175 million by 2007. The principal sources of these synergies include the optimization of brewery networks, increased procurement efficiencies, streamlined organizational design, consolidated administrative functions and greater tax efficiencies. The companies expect to identify additional synergy opportunities between now and closing. These synergies are in addition to cost saving initiatives already underway at both companies.

29.    In connection with the Merger, defendants prepared, ratified and filed with the SEC a Combination Agreement by and Among Aldoph Coors Company, Coors Canada, Inc. and Molson Inc., dated July 21, 2004 (the "Merger Agreement").  The Merger Agreement contained the following representations, warranties and conditions:

ARTICLE IV
REPRESENTATIONS AND WARRANTIES OF COORS

4.9  Absence of Certain Changes or Events.  Since December 28, 2003, the business of Coors and its Subsidiaries has been conducted in the ordinary course consistent with past practices and there has not been (i) any event, occurrence or development of a state of circumstances or facts which has had or would, individually or in the aggregate, reasonably be expected to have any Material Adverse Effect on Coors, (ii) any material revaluation by Coors of any of its assets, including, without limitation, writing down the value of capitalized inventory or writing off notes or accounts receivable or any material sale of assets of Coors other than in the ordinary course of business, (iii) any material damage, destruction or loss (whether or not covered by insurance) with respect to any material assets of Coors or its Subsidiaries, (iv) any material Contract cancelled, terminated, or materially adversely modified or (v) any event or action that if taken after the date hereof would be prohibited by Section 5.2 hereof.

\*\*\*

11

ARTICLE VII
CONDITIONS

7.2    Additional Conditions to Obligations of Molson.    The
obligation of Molson to consummate and effect the Arrangement
shall be subject to the satisfaction at or prior to the Effective Time
of each of the following conditions, any of which may be waived,
in writing, exclusively by Molson:

(a)  Representations and Warranties.  The representations
and warranties of each of Coors and Exchangeco contained in this
Agreement (without giving effect to any materiality (including the
word "material") or "Material Adverse Effect" qualification) shall
be true and correct as of the Closing Date with the same effect as if
made at and as of the Closing Date (other than such representations
that are made as of a specified date, which shall be true and correct
as of such date), except as would not reasonably be expected to
have, individually or in the aggregate, a Material Adverse Effect
on Coors or Exchangeco, as applicable. Molson shall have
received a certificate with respect to the foregoing signed on behalf
of Coors and Exchangeco by an authorized officer of Coors and
Exchangeco.
(b)  Agreements and Covenants.  Coors shall have
performed or complied in all material respects with all agreements
and covenants required by this Agreement to be performed or
complied with by it on or prior to the Closing Date, and Molson
shall have received a certificate to such effect signed on behalf of
Coors by an authorized officer of Coors.
(c)  No Material Adverse Change.  Since the date hereof,
there shall not have occurred any fact, event, change, development,
circumstance or effect which, individually or in the aggregate, has
had or would reasonably be expected to have a Material Adverse
Effect on Coors.

30.    On September 17, 2004, Coors and Molson announced that Coors had filed a

preliminary proxy statement pursuant to U.S. securities regulations with the SEC in connection

with the companies' previously announced merger of equals.  More specifically, the companies

stated:

The combination is expected to unlock significant value for
shareholders. From the outset, value creation will come from both
the ability to focus marketing investments on core brands to grow
revenues and the ability to capture an expected US$175 million in

annualized synergies, half of which are expected to be realized within the first 18 months following completion of the merger. Secondly, a stronger overall financial platform will lead to deeper support of core brands and key markets to drive revenue, share and volume growth. Finally, the merger will create the scale and balance sheet strength to allow Molson Coors Brewing Company to compete more effectively in the increasingly global and highly dynamic brewing industry long-term.

Leo Kiely, chief executive officer of Coors, stated, "Today's filing of the preliminary proxy is an important step in the merger process. We look forward to continuing to demonstrate to our shareholders the compelling nature of this transaction, notably its ability to create shareholder value on a sustained basis. I'm confident in our ability to achieve our goals for the new organization, and I am excited to work with a strong management team that represents a balanced combination of talent from both organizations."

Daniel J. O'Neill, chief executive officer of Molson, stated, "Through the capture of US$175 million in synergies, all of which will be taken to the bottom line in the first three years, this transaction will result in a 24 percent increase in pro forma profitability above current base-line trends. Given the combined company's significant cash flow and strong balance sheet with relatively low debt levels, we will also have the financial resources to make the investments necessary to ensure the ongoing strength of our brands.

31.    On October 14, 2004, Molson announced modifications to its proposed merger with Coors to address concerns raised by some institutional shareholders and pertaining to option holder voting rights and to compensation provisions relating to two key senior executives.  More specifically, Molson announced:

Separate Voting Rights for Option Holders

Option holders will not vote on the merits of the merger. They will vote separately and exclusively on the issue of converting their Molson options into Molson Coors options. The result of this vote will not affect whether the merger goes ahead. Senior management and Board members, who together own more than 66 2/3 of all outstanding options, have already committed to vote in favour of the option conversion.

The proposed voting provisions recognize that the legal rights of the optionholders are being affected by the merger, while at the same time addressing the concerns that shareholders should have a clear right to determine whether or not the merger should proceed. Molson has discussed the voting provisions with the office of the CBCA Director and intends to put forward the proposal to the court in its upcoming application with respect to the merger.

Change of Control Payments

Separately, Molson is announcing the following changes to certain contractual executive compensation provisions described in the preliminary proxy filing. These changes are being made as a result of recommendations voluntarily put forward by Daniel J. O'Neill, Chief Executive of Molson and Robert Coallier, Executive Vice President Corporate Strategy and International Operations in the interest of facilitating the timely approval and success of the Molson Coors merger:

Mr. O'Neill will not receive any payment on change of control. Rather, in the event of his leaving the Company within 24 months of the change of control, he will be entitled to his change of control payment in lieu of severance. Mr. Coallier will only receive a change of control payment in lieu of severance upon his resignation or termination.

Mr. O'Neill has also recommended that his 800,000 performance-based options and 50,000 restricted share units be converted into Molson Coors options / restricted share units and be subject to similar performance-related triggers.

32.    On November 5, 2004, Molson and Coors issued a joint press release with the headline "Molson and Coors Announce Agreement to Pay Special Dividend to Molson Shareholders." Therein, the companies stated:

Molson Inc. (TSX: MOL.A) and Adolph Coors Company today announced that in connection with the previously announced merger of the two companies, they have agreed to include a special dividend to Molson shareholders as part of the transaction. Pentland Securities (1981) Inc., a company owned by Eric H. Molson and Stephen T. Molson and controlled by Eric H. Molson, has agreed to forego any participation in the special dividend.

Both Molson Class A non-voting and Class B common shareholders, excluding Pentland, will receive C$ 3.26 per share, or a total of approximately C$ 381 million (US$ 316 million), payable as part of the plan of arrangement to Molson shareholders of record as of the last trading day immediately prior to the date of closing of the merger transaction. Had Pentland not agreed to forego participation in the special dividend, the special dividend payable to all Class A and Class B shareholders would have been C$ 3.00 per share. This payment has been approved by both companies' Boards of Directors. The other terms of the proposed merger transaction will remain as previously announced.

"Pentland's agreement to forego participation in the special dividend demonstrates a firm conviction that the Molson Coors merger is in the best interests of Molson and will bring significant value to its shareholders," said Eric H. Molson, Chairman of the Board of Molson. "Pentland is fully committed to the Molson Coors merger and no other transaction will be supported by Pentland" added Mr. Molson.

Both Coors and Molson agree that the merger is the best alternative for both companies, and are confident that the merged company can create greater levels of sustained shareholder value. Today's action provides immediate value to Molson shareholders while still enabling them to participate in the significant long-term upside of the combination.

33.     On or about December 10, 2004, defendants filed a proxy statement with the SEC, pursuant to Schedule 14A, which reaffirmed these disclosure requirements, in part, as follows:

Each party's obligation to complete the merger transaction is subject to the satisfaction of the following additional conditions by the other party:

- the material truth of representations and warranties and material compliance with covenants by the other party;

- the absence of events or changes that have or would reasonably be expected to have a material adverse effect on the other party;

***

Representations and Warranties
The combination agreement contains a number of customary
representations and warranties of Molson and Coors relating to,
among other things:

*** 

the accuracy of reports required to be filed with Canadian
securities regulatory authorities and the Toronto Stock Exchange,
in the case of Molson, and with the SEC and the New York Stock
Exchange, in the case of Coors, since January 1, 2002 and the
accuracy of the financial statements included in those reports;

absence of undisclosed liabilities;
absence of any material adverse effect and certain other changes or
events since the date of the last audited financial statements;

34.     The December 2004 Proxy Statement also reported on the specific factors

considered and purportedly relied upon by Molson's Independent Committee, prior to ratifying

the Merger Agreement and prior to advising Molson shareholders to vote in favor of the Merger.

In this regard, the December 2004 Proxy Statement stated, in part, the following:

Factors Considered by the Molson Independent Committee

On July 21, 2004, Molson's independent committee, after an
extensive review and thorough discussion of all facts and issues it
considered relevant with respect to the proposed merger
transaction, concluded unanimously that the proposed merger
transaction is fair to, and in the best interests of, the shareholders
of Molson, other than Pentland and Eric H. Molson, from a
financial and non-financial point of view. The Molson independent
committee subsequently proposed that Molson's full board of
directors authorize Molson to enter into the proposed combination
agreement and recommend to shareholders of Molson that they
vote in favor of the Molson shareholders resolution. On November
10, 2004, the Molson independent committee reaffirmed the
conclusions reached on July 21, 2004 as well as the
recommendations to Molson's full board of directors regarding the
proposed combination agreement, as amended, and the Molson
shareholders special resolution.

In reaching their conclusion and making their recommendation, the
members of the Molson independent committee relied on their

personal knowledge of Molson and the industry in which it is involved and on the advice of its legal and financial advisors. The Molson independent committee also reviewed the information provided by Molson and its advisors. The Molson independent committee considered numerous factors to be in favor of the merger, including among other things, the following:

\*\*\*

the current economic, industry and market trends affecting each of Molson and Coors in their respective markets, including those which favor the concentration of business in the hands of a small number of large companies;

\*\*\*

the significant opportunities for the combined company to realize the estimated annual cost savings resulting from the merger of approximately U.S.$50 million and $90 million, respectively, in the first two years following the merger and U.S.$175 million in annual cost savings thereafter;

the ability of the shareholders of Molson to continue to participate in future earnings and growth of the combined company after completion of the merger transaction through their ownership of shares of the combined company's stock or exchangeable shares of Molson Coors Exchangeco;

35.    On January 13, 2005, Molson and Coors issued a press release with the headline

"Molson and Coors Announce Agreement to Increase Special Dividend to Molson Shareholders;

Shareholder Meetings to Be Delayed." Therein, the companies stated:

Molson Inc. (TSX: MOL.A) and Adolph Coors Company (NYSE: RKY) today announced that, in connection with the previously announced merger of the two companies, they have agreed to increase the special dividend to Molson shareholders as part of the transaction. Pentland Securities (1981) Inc., a company owned by Eric H. Molson and Stephen T. Molson and controlled by Eric H. Molson, has once again agreed to waive any participation in the special dividend.

Molson Class A non-voting and Class B common shareholders, excluding Pentland, will receive C$5.44 per share, an increase of C$2.18 per share over the previously announced special dividend

of C$3.26 per share, or a total of approximately C$640 million (US$532 million), payable as part of the plan of arrangement to Molson shareholders of record as of the last trading day immediately prior to the date of closing of the merger transaction. Had Pentland not agreed to waive participation in the special dividend, the special dividend would have been C$5.00 per share. This payment has been approved by both companies' Boards of Directors. The other terms of the proposed merger transaction will remain as previously announced.

"Pentland remains totally committed to the merger and our decision to once again agree to waive participation in the special dividend is a testament of that. As shareholders with a controlling interest and a long-term view, we believe the merger with Coors provides the best business opportunity for Molson to be a proactive player in the global beer market," said Eric H. Molson, Chairman of the Board of Molson.

Molson announced today that its special meeting of shareholders scheduled for January 19, 2005 will be adjourned, and reconvened on January 28, 2005 at the Fairmont Queen Elizabeth Hotel, 900 Rene-Levesque Boulevard West, Montreal, Quebec, at 9:00 a.m., Eastern Time. The record date of November 22, 2004 to determine those Molson shareholders entitled to vote at the special meeting remains unchanged.

36.    On February 9, 2005, Molson and Coors announced that they had completed the transaction announced on July 22, 2004 to combine Molson and Coors in a merger of equals. Additionally, the companies stated:

Molson and Coors shareholders approved the combination at their special shareholder meetings held on January 28 and February 1, 2005, respectively, and the Quebec Superior Court approved the transaction as required by Canadian law on February 2, 2005.

W. Leo Kiely III, chief executive officer of Molson Coors Brewing Company said, "By combining Molson and Coors, we have created a company with the market and financial strength necessary to drive organic growth and compete more effectively in today's increasingly challenging global market, while preserving the rich heritages of two of the world's most prominent brewing companies. We look forward to drawing on this brewing heritage and the combined strengths of a world-class management team to

deliver greater value to our customers, partners, employees and shareholders."

"This transaction marks a new and important chapter in the history of both companies," said Eric H. Molson, chairman of Molson Coors Brewing Company. "It leverages successful business relationships and builds on the strategic and cultural fit between our two companies. With an impressive track record in brewing excellence, the new Molson Coors Brewing Company will be a dynamic and competitive organization that will create long-term value for our shareholders and the communities in which we operate."

Summary of the Transaction

The transaction was structured as a Plan of Arrangement under which each share of Molson held by a Canadian resident was exchanged, at the election of the holder, for exchangeable shares in a Canadian subsidiary of Molson Coors and/or Molson Coors stock. Molson shares held by nonresidents of Canada have been exchanged for Molson Coors stock. The transaction was structured to be tax deferred to Canadian resident Molson shareholders who have properly elected to receive exchangeable shares, and taxable to U.S. holders of Molson shares and those Canadian resident Molson shareholders who choose to convert to Molson Coors stock.

Under the Plan of Arrangement, each Molson Class B common share has been converted into shares which were exchanged for 0.126 voting share and 0.234 non-voting share of Molson Coors (or exchangeable shares, as applicable) and each Molson Class A non-voting share has been converted into shares which were exchanged for 0.360 non-voting share of Molson Coors (or exchangeable shares, as applicable). A total of 2,437,513 Class A exchangeable shares and 32,161,792 Class B exchangeable shares of Molson Coors Canada and 64,275 shares of Class A common stock and 12,084,689 shares of Class B common stock of Molson Coors Brewing Company have been issued as part of the merger transaction to former Molson shareholders. In addition, Molson shareholders of record at close of business on February 8, 2005, were eligible to receive a CDN $5.44 special dividend as part of the transaction.

Starting today, the Molson Coors Brewing Company is listed on the New York Stock Exchange under the ticker symbol NYSE:TAP.A and TAP. On the Toronto Stock Exchange, Molson

19

Coors common stock trades under the ticker symbol TAP.A and TAP.NV, and the exchangeable Class A and Class B shares trade under the symbol TPX.LV.A and TPX.NV.

37.    Also on February 9, 2005, Molson Coors announced the most recent financial results for Coors, reporting higher consolidated net sales, net income and earnings per share for the fourth quarter and full-year 2004.  More specifically, the Company stated:

> For the 13-week fourth quarter ended Dec. 26, 2004, the company reported net sales of $1.1 billion, up 10.2 percent from the fourth quarter of 2003. Fourth quarter 2004 sales volume increased 4.7 percent from the fourth quarter 2003. Fourth quarter operating income of $90.9 million and net income of $55.7 million increased 37.5 percent and 54.4 percent, respectively, from a year ago. Fourth quarter earnings per share were $1.45, up 48.0 percent from a year earlier. Earnings for fourth quarter 2004 benefited from solid beer pricing and volume growth in the company's Americas and Europe segments, along with one-time gains on asset sales totaling $19.2 million pretax, a lower effective tax rate, and favorable foreign currency exchange rates. These results do not include Molson Inc. financial results for the quarter ended December 2004, which were released separately.

> For the 52-week fiscal year ended Dec. 26, 2004, Adolph Coors Company achieved consolidated net sales of $4.3 billion, a 7.6 percent increase from 2003. Reported sales volume totaled 32,703,000 U.S. barrels, or 38,376,000 hectoliters, in 2004, a 0.1 percent decrease from 2003. Net income for the full year was $196.7 million, a 12.6 percent increase compared to full year 2003, and earnings per share were $5.19, up 8.8 percent from the prior year.

> Leo Kiely, chief executive officer, said, "Overall, Adolph Coors Company finished 2004 with good financial results in a very competitive industry environment. In the U.S., despite very soft industry demand, our sales to retail increased in the fourth quarter, partially driven by the comparison to lower sales in the fourth quarter of 2003, when we faced U.S. supply-chain challenges. Our volume trends also benefited from the introduction of Aspen Edge earlier this year and strong growth from our Blue Moon and Zima XXX brands in the fourth quarter. In addition, continued progress on productivity initiatives in our U.S. operations enabled us to manage cost pressures, which were particularly challenging in the

areas of energy and packaging materials. In Canada, our Coors Light business continued to deliver strong profit growth.

"Our U.K. business achieved solid growth in volume, net sales and earnings for the fourth quarter, despite higher distribution costs and continued declines in sales of flavored alcohol beverages and non-owned beverage brands. Profit growth in our Europe segment was driven by a gain on the sale of our Cape Hill brewery property, strong volume performance from Carling and Grolsch, improved pricing in both the on- and off-trade channels, and favorable foreign exchange rates. For the full year, we gained market share in the U.K. in both the on-trade and off-trade channels.

"On a company-wide basis in the fourth quarter, we repaid about $127 million of debt, resulting in full-year debt repaymentsof $382 million. We have now repaid $862 million of debt in the past three years, essentially all of our short-term debt and more than half of the debt related to our 2002 CBL acquisition.

"Looking ahead, we will be simultaneously focused on improving the fundamentals of our U.S. and U.K. businesses and on working with our new colleagues from Molson to maximize the value opportunities presented by the Molson Coors merger, which closed earlier today."

38.     The statements contained in ¶¶28-37 were materially false and misleading when made because defendants failed to disclose or indicate the following: (1) that at the time of the merger (on or about February 9, 2005), Molson Coors was experiencing material adverse changes to its business; (2) that at the time of the merger, Coors's business was, and would continue to be, adversely impacted by the conditions which materially impacted the Company's performance so that Coors was operating well below plan and well below consensus estimates; (3) that demand for the Company's products had dramatically slowed; and (4) that Coors and, as a result of the merger, Molson Coors suffered from fundamental erosion of its business in all four of its core markets.

**The Truth Begins To Emerge**

39.    On April 28, 2005, only weeks after the merger closed, before the open of trading, defendants published a release announcing disappointing results for the Company's first quarter of 2005.  More specifically, the Company stated:

> Molson Coors Brewing Company (NYSE: TAP; Toronto) today announced higher consolidated net sales and sales volume for the first quarter of 2005 compared to the first quarter of 2004, but reported a net loss in the 2005 first quarter. The net loss was primarily attributable to lower sales volume in key markets versus a year earlier and special charges related to the recent Molson Coors merger totaling $40.7 million in the first quarter of 2005.
>
> The company's 2005 first quarter results include the business of Molson Inc. following the completion of the merger on Feb. 9, 2005, compared to the first quarter of 2004, which includes only the results of the former Adolph Coors Company. The company's reported consolidated sales volume and net sales increased in the 2005 first quarter compared to the first quarter 2004 due to the combination of the Molson and Coors businesses.
>
> For the 13-week first quarter ended March 27, 2005, the merged company reported net sales of $1.1 billion and sales volume of 8,094,000 barrels, or 9,497,985 hectoliters (HLs). The company reported a net loss of $46.5 million, or $0.74 per share, during the 2005 first quarter. Excluding special items, the company reported an after-tax loss of $5.1 million during the 2005 first quarter. (See the company's website, www.molsoncoors.com for reconciliation to the nearest U.S. GAAP measure.)
>
> ***
>
> On a pro forma basis, the company reported a consolidated net loss of $79 million, or $0.91 per share, based on 86.2 million pro forma diluted shares outstanding during the 2005 first quarter.
>
> Leo Kiely, Molson Coors president and chief executive officer, said, "The common underlying cause for difficult first quarter results was the lack of volume growth in each of our major markets. While disappointing, this performance reinforces the importance of integrating the operations and organization of the combined company, so we can capitalize on our new strengths and build an even more competitive and profitable global enterprise.

40.     Following the publication of the results referenced in ¶39, defendants hosted a

conference call, a transcript of which was available publicly from various sources, for analysts

and investors during which defendants also revealed, in part, the following:

> Pro forma volume of only 10.7 billion barrels represented a 5.6%
> decline year over year due to lower volumes in all of the
> Company's major markets;
>
> Net sales were also down 6% pro-forma year over year to $1.2
> billion;
>
> Pro-forma net loss was $79.0 million versus a pro-forma net gain
> of $36 million reported in 1Q:04 - - excluding charges, pro-forma
> net loss was $4.0 million or $0.04 per share
>
> Excluding Molson brands, pro forma US volume year over year
> declined 3.6% due  to soft sales to retail and because distributors
> ended the first quarter last year with  inventories about 100,000
> barrels higher than normal due to rollout of Aspen Edge  and re-
> launch of Zima;
>
> "These results are well below our performance goals and the
> potential we see for our Company." (Defendant Kiely)

41.     On news of this, shares of the Company fell $14.89 per share, or 18.5 percent, to

close at $63.00 per share on unusually heavy trading volume.

42.     That same day, defendant O'Neill resigned from his post as Chair of Office of

Synergies and Integration, taking with him $4.8 million as a severance payment.

## UNDISCLOSED ADVERSE FACTS

43.     The market for Molson Coors's securities was open, well-developed and efficient

at all relevant times.  As a result of these materially false and misleading statements and failures

to disclose, Molson Coors's securities traded at artificially inflated prices during the Class

Period.  Plaintiff and other members of the Class purchased or otherwise acquired Molson Coors

securities relying upon the integrity of the market price of Molson Coors's securities and market

information relating to Molson Coors, and have been damaged thereby.

44.    During the Class Period, defendants materially misled the investing public, thereby inflating the price of Molson Coors's securities, by publicly issuing false and misleading statements and omitting to disclose material facts necessary to make defendants' statements, as set forth herein, not false and misleading.  Said statements and omissions were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about the Company, its business and operations, as alleged herein.

45.    At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, defendants made or caused to be made a series of materially false or misleading statements about Molson Coors's business, prospects and operations.    These material misstatements and omissions had the cause and effect of creating in the market an unrealistically positive assessment of Molson Coors and its business, prospects and operations, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times.  Defendants' materially false and misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein.

## ADDITIONAL SCIENTER ALLEGATIONS

46.    As alleged herein, defendants acted with scienter in that defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  As set forth elsewhere herein in detail, defendants, by virtue of their

receipt of information reflecting the true facts regarding Molson Coors, their control over, and/or receipt and/or modification of Molson Coors's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Molson Coors, participated in the fraudulent scheme alleged herein.

47.    Defendants knew and/or recklessly disregarded the falsity and misleading nature of the information which they caused to be disseminated to the investing public.  The ongoing fraudulent scheme described in this complaint could not have been perpetrated over a substantial period of time, as has occurred, without the knowledge and complicity of the personnel at the highest level of the Company, including the Individual Defendants.

48.    Additionally, Defendants were motivated to conceal these material facts alleged herein because it enabled them to effectuate the merger in a manner that allowed the relatives and heirs of the Coors and Molson families to dominate the combined Company.

**Applicability Of Presumption Of Reliance:**
**<u>Fraud On The Market Doctrine</u>**

49.    At all relevant times, the market for Molson Coors securities was an efficient market for the following reasons, among others:

(a)    Molson Coors stock met the requirements for listing, and was listed and actively traded on the NYSE, a highly efficient and automated market;

(b)    As a regulated issuer, Molson Coors filed periodic public reports with the SEC and the NYSE;

(c)    Molson Coors regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-

ranging public disclosures, such as communications with the financial press and other similar reporting services; and

(d)    Molson Coors was followed by several securities analysts employed by major brokerage firms who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

50.    As a result of the foregoing, the market for Molson Coors securities promptly digested current information regarding Molson Coors from all publicly-available sources and reflected such information in Molson Coors stock price. Under these circumstances, all purchasers of Molson Coors securities during the Class Period suffered similar injury through their purchase of Molson Coors securities at artificially inflated prices and a presumption of reliance applies.

**NO SAFE HARBOR**

51.    The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this complaint. Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made. To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized

and/or approved by an executive officer of Molson Coors who knew that those statements were false when made.

### FIRST CLAIM
### Violation Of Section 10(b) Of
### The Exchange Act Against And Rule 10b-5
### <u>Promulgated Thereunder Against All Defendants</u>

52.    Plaintiff incorporates by reference each and every allegation contained above, as if set forth herein only to the extent, however, that such allegations do not allege fraud, scienter or the intent of the defendants to defraud plaintiff or members of the Class.   This count is predicated upon defendants' strict liability for making false and materially misleading statements in the Registration Statement and/or Proxy-Prospectus.   This Count is asserted by plaintiff against all defendants by and on behalf of persons who acquired shares of the Company pursuant to the false Registration Statement and Proxy Statement issued in connection with the February 2005 Merger.

53.    As a result of the foregoing, the defendants named herein violated  §14(a) of the Exchange Act and obtained the approval of the Merger by the Molson shareholders, by way of a false and misleading Prospectus.

54.    These defendants prepared, disseminated and/or approved the false Joint Proxy/ Prospectus specified above, which contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

55.    Defendants have violated §14(a) of the Exchange Act and SEC Rule 14a-9 in that they issued the Prospectus to solicit and obtain the votes of Molson shareholders, to approve the Merger of Molson by and into the Company by making statements which defendants should have

known were untrue and/or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

56.    As a consequence of the foregoing course of conduct, and the resulting decline in the price of the Company's stock, plaintiff and the members of the Class have been damaged.

**SECOND CLAIM**
**Violation Of Section 20(a) Of**
**The Exchange Act Against the Individual Defendants**

57.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

58.    During the Class Period, defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Molson Coors securities at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

59.    Defendants (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Molson Coors securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5.  All defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

60.    Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a

continuous course of conduct to conceal adverse material information about the business, operations and future prospects of Molson Coors as specified herein.

61.     These defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Molson Coors value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about Molson Coors and its business operations and future prospects in the light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of Molson Coors securities during the Class Period.

62.     Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of his or her responsibilities and activities as a senior officer and/or director of the Company was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of and had access to other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants

was aware of the Company's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

63.    The defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them.  Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Molson Coors' operating condition and future business prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by defendants' overstatements and misstatements of the Company's business, operations and earnings throughout the Class Period, defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

64.    As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of Molson Coors securities was artificially inflated during the Class Period.  In ignorance of the fact that market prices of Molson Coors's publicly-traded securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by defendants, or upon the integrity of the market in which the securities trades, and/or on the absence of material adverse information that was known to or recklessly disregarded by defendants but not disclosed in public statements by defendants during the Class Period, Plaintiff and the other members of the Class acquired Molson Coors securities during the Class Period at artificially high prices and were damaged thereby.

65. At the time of said misrepresentations and omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that Molson Coors was experiencing, which were not disclosed by defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Molson Coors securities or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

66. By virtue of the foregoing, defendants have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

67. As a direct and proximate result of defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

### THIRD CLAIM
### Violation Of Section 20(a) Of
### The Exchange Act Against the Individual Defendants

68. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

69. The Individual Defendants acted as controlling persons of Molson Coors within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions, their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contend are false and misleading. The Individual Defendants were

provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

70.     In particular, each of these defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

71.     As set forth above, Molson Coors and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)     Determining that this action is a proper class action, designating Plaintiff as Lead Plaintiff and certifying Plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel as Lead Counsel;

(b)     Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)    Such other and further relief as the Court may deem just and proper.


## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.



PRICKETT, JONES & ELLIOTT, P.A.


By: _____
    Gary F. Traynor (DE Bar No. 2131)
    (gftraynor@prickett.com)
    Paul A. Fioravanti, Jr. Esquire (DE Bar No. 3808)
    (pafioravanti@prickett.com)
    1310 King Street
    Wilmington, Delaware 19801
    (302)888-6500
    Attorneys for Plaintiff

OF COUNSEL:

SCHIFFRIN & BARROWAY, LLP
Marc A. Topaz, Esquire
Richard A. Maniskas, Esquire
Tamara Skvirsky, Esquire
280 King of Prussia Road
Radnor, PA 19087
(610) 667-7706

Dated:  May 24, 2005

# EXHIBIT A

## CERTIFICATION OF NAMED PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES LAWS

I, (print name) **David Silver (IRA)** ("Plaintiff") declare, as to the claims asserted under the federal securities laws, that:

1. Plaintiff has reviewed the Complaint and authorizes its filing.

2. Plaintiff did not purchase the security that is the subject of this action at the direction of Plaintiff's counsel or in order to participate in any private action.

3. Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4. Plaintiff's transaction(s) in the **Molson Coors Brewing Company (NYSE: TAP or TAP/A) or Molson, Inc. (TSX: MOL.A or MOL.B)** security that is the subject of this action during the Class Period is/are as follows[1]:

| No. of Shares | Buy/Sell | Date | Price Per Share |
|---|---|---|---|
| 300 | Buy | 4/21/2005 | 77.99 |
| | | | |
| | | | |

[1]List additional transactions on a separate sheet of paper, if necessary.

5. Plaintiff has complete authority to bring a suit to recover for investment losses.

6. During the three years prior to the date of this Certification, Plaintiff has sought to serve or served as a representative party or a class in the following actions filed under the federal securities laws (if none, so indicate): **None**

7. Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 18th day of May, 2005

_David Silver_
Signature

David Silver
Print Name