# EXHIBIT D
## to letter to Hon. Kent A. Jordan from Seth D. Rigrodsky dated November 4, 2005

THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

| | |
|---|---|
| SOUTH FERRY LP #2, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>KERRY K. KILLINGER, et al,<br><br>Defendant. | No. CV-04-1599-C<br><br>CLASS ACTION |
| KARL CLARK, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>WASHINGTON MUTUAL, INC, et al.,<br><br>Defendants. | No. CV-04-1627-C<br><br>CLASS ACTION |

MEMORANDUM IN FURTHER SUPPORT OF THE MOTION OF CITY OF PONTIAC FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF AND FOR APPROVAL OF SELECTION OF LEAD COUNSEL AND IN OPPOSITION TO THE COMPETING MOTION

MEMORANDUM IN FURTHER SUPPORT OF THE MOTION OF CITY OF PONTIAC FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF (CV-04-1599-C)

Lerach Coughlin Stoia Geller Rudman & Robbins LLP
700 Fifth Avenue, Suite 5600, Seattle, WA 98104
Telephone: Telephone: 206/749-5544 • Fax: 206/749-9978

| | |
|---|---|
| JOSEPH R. RUSSO, Individually and On Behalf of All Others Similarly Situated,<br><br>　　　　　　　　Plaintiff,<br><br>vs.<br><br>WASHINGTON MUTUAL, INC., et al,<br><br>　　　　　　　　Defendants. | No. CV-04-1693-Z<br><br>CLASS ACTION |
| STEVEN BURDA, Individually and On Behalf of All Others Similarly Situated,<br><br>　　　　　　　　Plaintiff,<br><br>vs.<br><br>KERRY K. KILLINGER, et al.,<br><br>　　　　　　　　Defendants. | No. CV-04-1738-Z<br><br>CLASS ACTION |

MEMORANDUM IN FURTHER SUPPORT OF THE MOTION OF CITY OF PONTIAC FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF (CV-04-1693-Z)

Lerach Coughlin Stoia Geller Rudman & Robbins LLP
700 Fifth Avenue, Suite 5600, Seattle, WA 98104
Telephone: Telephone: 206/749-5544 • Fax: 206/749-9978

TABLE OF CONTENTS

I. PRELIMINARY STATEMENT ..................................................................................................1

II. ARGUMENT..............................................................................................................................4

    A. The PSLRA's Lead Plaintiff Provisions..............................................................................4

    B. The City of Pontiac Is the Most Adequate Plaintiff Because It Has the Largest Loss and also Satisfies the Requirements of Rule 23 ................................5

        1. Metzler Does Not Have Any Financial Interest in the Relief Sought in This Case..............................................................................................................5

        2. South Ferry LP #2 Has Overstated Its Losses By At Least $35,000 ...........8

        3. Walden Management Has Overstated Its Losses By Approximately $25,000..............................................................................................................8

        4. The Signatories on Metzler's Certification Have Not Demonstrated That They Have the Authority to Bring Suit on Behalf of Metzler.............9

    C. The WAMU Group Is An Impermissible Grouping Of Unrelated Investors And Is Therefore Inadequate And May Not Serve As Lead Plaintiff...................10

    D. Metzler Does Not Otherwise Meet the Requirements of Rule 23 Because It Is A Foreign Investment Advisor Subject to Unique Defenses..........................11

III. CONCLUSION......................................................................................................................12

MEMORANDUM IN FURTHER SUPPORT
OF THE MOTION OF CITY OF PONTIAC
FOR CONSOLIDATION, APPOINTMENT AS
LEAD PLAINTIFF (CV-04-1693-Z)                i

Lerach Coughlin Stoia Geller Rudman & Robbins LLP
700 Fifth Avenue, Suite 5600, Seattle, WA 98104
Telephone: 206/749-5544 • Fax: 206/749-9978

# TABLE OF AUTHORITIES

## CASES

*Ansari v. New York University*,
   179 F.R.D. 112 (S.D.N.Y. 1998) ................................................................................11

*In re Baan Co. Sec. Litigation*,
   186 F.R.D. 214 (D.D.C. 1999) ..................................................................................10

*Bersch v. Drexel Firestone, Inc.*,
   519 F.2d 974 (2d Cir. 1975) ................................................................................. 4, 11

*Cavanaugh v. USDC N.D. Cal.*,
   306 F.3d 726 (9th Cir. 2002) ................................................................................... 5, 6

*Chill v. Green Tree Finance Corp.*,
   181 F.R.D. 398 (D. Minn. 1998) ...............................................................................10

*Crawford v. Onyx Software Corp.*,
   2002 U.S. Dist. LEXIS 1101 (W.D. Wash., Jan. 10, 2002) .................................. 3, 10

*In re McKesson HBOC, Inc. Sec. Litigation*,
   97 F. Supp. 2d 993 (N.D. Cal. 1999) ..................................................................... 5, 6

*In re Network Associates Sec. Litigation*,
   76 F. Supp. 2d 1017 (N.D. Cal. 1999) .........................................................................6

*Piven v. Sykes Enterprises*,
   137 F. Supp. 2d 1295 (M.D. Fla. 2000) .......................................................................9

*Royal Ahold N.V. Sec. ERISA Litigation*,
   219 F.R.D. 343 (D. Md. 2003) ..................................................................................11

*Smith v. Suprema Specialties, Inc.*,
   206 F. Supp. 2d 627 (D.N.J. 2002) ...................................................................... 2, 6, 7

*In re Turkcell Iletisim Hizmetler, A.S. Sec. Litigation*,
   209 F.R.D. 353 (S.D.N.Y. 2002) ............................................................................. 2, 6

*In re DaimlerChrysler AG Sec. Litigation*,
   No. 00-993` (D. Del. Jan. 8, 2003) ........................................................................ 4, 11

## FEDERAL STATUTES

15 U.S.C. §78u-4(a)(3) ....................................................................................................... 4, 6

15 U.S.C. §78u-4(a)(3)(I) ................................................................................................... 1, 5

## OTHER

H.R. Conf. Rep. 104-327, at 34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 737 ...................6

MEMORANDUM IN FURTHER SUPPORT
OF THE MOTION OF CITY OF PONTIAC
FOR CONSOLIDATION, APPOINTMENT AS
LEAD PLAINTIFF (CV-04-1693-Z)            ii

Lerach Coughlin Stoia Geller Rudman & Robbins LLP
700 Fifth Avenue, Suite 5600, Seattle, WA 98104
Telephone: 206/749-5544 • Fax: 206/749-9978

Institutional Investor City of Pontiac Policemen's and Firemen's Retirement System ("City of Pontiac") respectfully submits this memorandum of law in further support of its motion for appointment as Lead Plaintiff and for approval of its selection of Lerach Coughlin Stoia Geller Rudman & Robbins LLP ("Lerach Coughlin") as Lead Counsel, pursuant to §21D(a)(3)(B) of the Securities Exchange Act of 1934 ("Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA").

## I.   PRELIMINARY STATEMENT

On or about September 20, 2004, two motions were filed with this Court, each seeking consolidation of the above-captioned actions, appointment of each movant or movant group as lead plaintiff and approval of the respective movants' selection of counsel. The motions were filed by: (i) the City of Pontiac; and (ii) Metzler Investment GmbH ("Metzler"), South Ferry LP #2 ("South Ferry") and The Walden Management Co. Pension Plan ("Walden Management") (collectively, the "WAMU Investors Lead Plaintiff Group" or "WAMU Group").

The self-styled WAMU Investors Lead Plaintiff Group appears to represent the "largest financial interest" of the two movants. 15 U.S.C. §78u-4(a)(3)(B)(iii)(I). However, a careful review of the certifications submitted by the members of the WAMU Group raise serious questions as to the accuracy of the financial information provided by them and the adequacy of the WAMU Group to serve as Lead Plaintiff.

With respect to the WAMU Group's reported financial interest, the WAMU Group has materially overstated its financial interests for the following reasons: (i) Metzler is an investment advisor that does not own any of the shares that it has reported on its certification. Accordingly, Metzler's financial interest is $0 not $367,623.92; (ii) South Ferry LP #2 has materially overstated its losses by improperly equating its losses with the total purchase price of the options contract it purchased as opposed to the difference between the purchase price of the option and the price of the option after the disclosure that ends the Class Period. This error results in approximately a $35,000 overstatement, thereby reducing South Ferry LP #2's losses to $65,000; and (iii) Walden

MEMORANDUM IN FURTHER
SUPPORT OF THE MOTION OF CITY
OF PONTIAC FOR CONSOLIDATION,
APPOINTMENT AS LEAD PLAINTIFF
(CV-04-1693-Z)                               - 1 -

Lerach Coughlin Stoia Geller Rudman & Robbins LLP
700 Fifth Avenue, Suite 5600, Seattle, WA 98104
Telephone: 206/749-5544 • Fax: 206/749-9978

1  Management reports a purchase of 5,700 at a price of $43.78 per share on January 5, 2004. Yet, on
2  January 5, 204, the stock price of Washington Mutual did not trade at the price reported by Walden
3  Management. This error could result in an overstatement of approximately $25,000. In total, the
4  WAMU Group has overstated its reported losses by more than $425,000, thereby reducing their
5  losses to approximately $68,000.

6  Metzler is a German-based investment advisor. As such, Metzler makes investment
7  decisions on behalf of its clients but does not own the securities, its clients do. Thus, Metzler has
8  failed to establish that it (as opposed to its *clients*) has any financial interest in this litigation or that it
9  has been authorized by its clients to seek lead plaintiff status. *See, e.g., In re Turkcell Iletisim*
10 *Hizmetler, A.S. Sec. Litig.*, 209 F.R.D. 353, 357-58 (S.D.N.Y. 2002) (holding that investment
11 advisors lack standing to claim their clients' financial interest). Indeed, Metzler has not timely
12 provided any competent evidence that it either: (1) obtained authority from its clients to bring suit or
13 seek lead plaintiff status based on its clients' losses; or (2) suffered an actual loss itself. *See Smith v.*
14 *Suprema Specialties, Inc.*, 206 F. Supp. 2d 627, 634-35 (D.N.J. 2002) ("The clients' mere grant of
15 authority to an investment manager to invest on its behalf does not confer authority to initiate suit on
16 its behalf."); *Turkcell*, 209 F.R.D. at 357-58. Thus, Metzler has failed to establish that it has *any*
17 financial interest at all in the relief sought by the class.

18 South Ferry LP #2 reports a loss of $100,000 on a single options purchase – the purchase of a
19 call contract with a strike price of $42.50 per share on June 24, 2004 (four days before the end of the
20 Class Period) which expired worthless two months later. South Ferry LP #2 claims that the entire
21 purchase price of the options contract is its "loss." How? The proper loss calculation for this
22 transaction would be the difference between the price paid for the contract and the price of the
23 contract after the disclosure of the adverse information that ends the Class Period. Here, as detailed

MEMORANDUM IN FURTHER
SUPPORT OF THE MOTION OF CITY
OF PONTIAC FOR CONSOLIDATION,
APPOINTMENT AS LEAD PLAINTIFF
(CV-04-1693-Z)                                            - 2 -

Lerach Coughlin Stoia Geller Rudman & Robbins LLP
700 Fifth Avenue, Suite 5600, Seattle, WA 98104
Telephone: 206/749-5544 • Fax: 206/749-9978

below, the proper calculation reduces South Ferry LP #2's losses to $65,000, thereby further reducing the losses of the WAMU Group.[1]

Finally, Walden Management reported losses are grossly overstated. A review of its certification reports that Walden Management's purchase of 5,700 shares took place on January 5, 2004 at $43.78 per share. The trading range of Washington Mutual stock on that day was between $39.45 per share and $39.98 per share, well below Walden Management's claimed purchase price of $43.78 per share. Indeed, Walden Management's claimed loss of $28,194.50 could fall to as low as $3,513.50 (using the low trading price of the day). It may be, however, that Walden Management did not even purchase the 5,700 shares during the Class Period.

If the Court credits the loss figures reported by the WAMU Group, which it should not do, it must then assure itself that the WAMU Group is adequate and typical to serve as Lead Plaintiff. It is respectfully submitted that the WAMU Group is inadequate and atypical for several reasons.

Although groups of persons or entities are proper Lead Plaintiff movants under certain circumstances (which are not present here), the WAMU Group is an impermissible grouping of unrelated entities which has failed to make any showing that it can operate cohesively or, for that matter, that the members of the so-called group ever talked to one another or know of each other's existence.[2] Indeed, the make-up of the WAMU Group is bizarre in the extreme – Metzler is a German investment advisor, South Ferry LP #2 provides no information about who or what it is and

---

[1] As detailed herein, South Ferry LP #2 should be eliminated from Lead Plaintiff consideration because it has not submitted adequate information to determine what it is, who signed the certification and whether the signatory had authority to bind South Ferry LP #2.

[2] See Crawford v. Onyx Software Corp., 2002 U.S. Dist. LEXIS 1101, *4-*5 (W.D. Wash., Jan. 10, 2002) ("A loose group of investors whose relationship was forged only in an effort to win appointment as lead plaintiff has no real cohesiveness, is less likely to be in control of the litigation, and is subject to all of the obstacles that normally make group action difficult.")

MEMORANDUM IN FURTHER
SUPPORT OF THE MOTION OF CITY
OF PONTIAC FOR CONSOLIDATION,
APPOINTMENT AS LEAD PLAINTIFF
(CV-04-1693-Z)                                - 3 -

Lerach Coughlin Stoia Geller Rudman & Robbins LLP
700 Fifth Avenue, Suite 5600, Seattle, WA 98104
Telephone: 206/749-5544 • Fax: 206/749-9978

Walden Management is a Texas-based apartment building management company (although the WAMU Group provides no information on Walden Management).

Further raising issues as to the WAMU Group's adequacy, Metzler is a German investment advisor and "it is highly unlikely that a German court would recognize as binding against those German shareholders any judgment entered in a U.S. class action. . . ."[3] Therefore, Metzler is subject to the unique defense that any judgment it achieved on behalf of its clients would not be *res judicata*.

As explained herein in further detail, the City of Pontiac, which has suffered losses of $64,257.64, is the only *bona fide* movant that has timely filed a motion, represents the largest financial interest of the qualified movants and otherwise satisfies the adequacy and typicality requirements of Rule 23. Accordingly, its motion should be granted and it should be appointed Lead Plaintiff and its selection of Lead Counsel should be approved.

## II.  ARGUMENT

### A.  The PSLRA's Lead Plaintiff Provisions

Section 21D of the PSLRA provides that in securities class actions, courts "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." 15 U.S.C. §78u-4(a)(3)(B)(i). In determining who is the "most adequate plaintiff," the PSLRA provides that:

> [T]he court shall adopt a presumption that the most adequate plaintiff ...
>
> is the person or group of persons that —
>
> \*   \*   \*

---

[3] *In re DaimlerChrysler AG Sec. Litig.*, No. 00-993, Declaration of Rolf Sturner (D. Del. Jan. 8, 2003), Declaration of Tamara J. Driscoll in Support of the City of Pontiac's Opposition to Competing Motions for Appointment as Lead Plaintiff ("Driscoll Decl."), Ex. C; *Bersch v. Drexel Firestone, Inc.*, 519 F.2d 974, 996 (2d Cir. 1975) (holding that because Germany would not recognize a judgment in the United States, a class containing German plaintiffs could not be certified).

MEMORANDUM IN FURTHER
SUPPORT OF THE MOTION OF CITY
OF PONTIAC FOR CONSOLIDATION,
APPOINTMENT AS LEAD PLAINTIFF
(CV-04-1693-Z)

Lerach Coughlin Stoia Geller Rudman & Robbins LLP
700 Fifth Avenue, Suite 5600, Seattle, WA 98104
Telephone: 206/749-5544 • Fax: 206/749-9978

- 4 -

(bb) in the determination of the court, has the *largest financial interest* in the relief sought by the class; *and*

(cc) *otherwise satisfies the requirements of Rule 23* of the Federal Rules of Civil Procedure.

15 U.S.C. §78u-4(a)(3)(B)(iii)(I).[4]

### B. The City of Pontiac Is the Most Adequate Plaintiff Because It Has the Largest Loss and also Satisfies the Requirements of Rule 23

The Ninth Circuit has expressly delineated the process district courts are to apply in selecting the "'presumptively most adequate plaintiff'" under the PSLRA. *See Cavanaugh*, 306 F.3d 726 at 729-33. First, the district court must consider the losses allegedly suffered by the various movants to determine which one has the greatest loss. *See id.* at 729-30. Once the district court determines which movant or movant group has the greatest loss, it must then focus its attention on that movant and determine, based on the information provided in its pleadings and declarations, whether the movant satisfies the requirements of Rule 23(a). *Id.* at 730. Finally, if the movant with the largest loss also satisfies Rule 23, that movant becomes the presumptive lead plaintiff. *Id.*

The WAMU Group purports to have suffered losses of $495,818.41. That figure is overstated, by at least $425,000 as detailed below. Accordingly, the City Of Pontiac with losses of more than $64,000 has the greatest financial interest in this litigation of any proper movant and should be appointed Lead Plaintiff.

#### 1. Metzler Does Not Have Any Financial Interest in the Relief Sought in This Case

The issue of "financial interest in the relief sought" is the fundamental principle underlying the lead plaintiff provisions of the PSLRA. 15 U.S.C. §78u-4(a)(3)(B)(iii)(I). As Judge Whyte succinctly stated in *McKesson*, "[o]ne's 'interest' in a litigation is rather directly tied to what one might recover." *See In re McKesson HBOC, Inc. Sec. Litig.*, 97 F. Supp. 2d 993, 997 (N.D. Cal.

---

[4] Unless otherwise noted, all emphasis is added and citations are omitted.

MEMORANDUM IN FURTHER SUPPORT OF THE MOTION OF CITY OF PONTIAC FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF (CV-04-1693-Z)

Lerach Coughlin Stoia Geller Rudman & Robbins LLP
700 Fifth Avenue, Suite 5600, Seattle, WA 98104
Telephone: 206/749-5544 • Fax: 206/749-9978

- 5 -

1999). Indeed, the Ninth Circuit's *Cavanaugh* decision confirms that "the *only* basis on which a court may compare plaintiffs competing to serve as lead is the size of their financial stake in the controversy." 306 F.3d at 732 (emphasis in original); *see also* 15 U.S.C. §78u-4(a)(3)(B)(iii).

Investment managers such as Metzler, however, have no financial stake in the litigation and will recover nothing regardless of the outcome of the case. Indeed, it is axiomatic that an investment advisor's *individual clients* (not the investment advisor itself) are the ones who suffer losses from the purchase of the securities at issue. *See In re Network Assocs. Sec. Litig.*, 76 F. Supp. 2d 1017, 1030 (N.D. Cal. 1999) (denying investment advisor's motion).

Indeed, even if this case were to yield a 100% recovery for plaintiffs, Metzler's clients would recover their entire $367,623.92 loss, yet Metzler itself would recover *nothing*. *See McKesson*, 97 F. Supp. 2d at 997 (finding that financial interest is "directly tied" to potential recovery); *Suprema*, 206 F. Supp. 2d at 634-36 (court reduced an investment advisor's claimed loss to the difference between its claimed interest and that which the advisor actually had suffered); *Turkcell*, 209 F.R.D. at 357-58 (limiting investment advisor's loss to the .35% fee it earned on the total assets it invested). To appoint a movant who lacks an actual financial interest in the relief sought would be contrary to one of the fundamental precepts of the PSLRA, which was to appoint as lead plaintiffs, those "class members with large amounts at stake." H.R. Conf. Rep. 104-327, at 34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 737.

In *Suprema*, the district court addressed whether investment advisors like Metzler could be appointed lead plaintiff on behalf of entities for whom it claimed to make investment decisions. 206 F. Supp. 2d at 634. The court found that, "[a]lthough on the surface it appear[ed]" that the investment advisor had suffered the greatest financial loss, *the investment advisor was not entitled to lead plaintiff status because it did not suffer the loss it claimed* and for instance, submit evidence that they received permission to prosecute the litigation on its clients' behalf. *Id.* at 633-34. Importantly, in denying the investment advisor's motion, the *Suprema* court reduced the claimed

MEMORANDUM IN FURTHER
SUPPORT OF THE MOTION OF CITY
OF PONTIAC FOR CONSOLIDATION,
APPOINTMENT AS LEAD PLAINTIFF
(CV-04-1693-Z)                              - 6 -

Lerach Coughlin Stoia Geller Rudman & Robbins LLP
700 Fifth Avenue, Suite 5600, Seattle, WA 98104
Telephone: 206/749-5544 • Fax: 206/749-9978

1  losses from $2.1 million to $310,000 – representing the difference between its claimed financial
2  interest based on its clients' losses, and those losses the advisor actually suffered. *Id.* at 636.

3        Here, like the investment advisor in *Suprema*, Metzler has also failed to provide any specific
4  evidence that it is anything more than a figurehead plaintiff aggregating losses suffered not by itself,
5  but by dozens or even hundreds of its clients without its clients even knowing about, let alone
6  authorizing, the litigation. Here, no evidence was provided that Metzler either suffered any loss of
7  its own assets or received authority from each (or any, for that matter) of their individual clients to
8  move for lead plaintiff or file suit on its behalf *prior* to filing a lead plaintiff motion. *See Suprema*,
9  206 F. Supp. 2d at 634-35.

10        Apparently recognizing that it lacked the requisite authority to file, prosecute and resolve
11  securities fraud class actions for losses actually suffered by its clients, Metzler's counsel – and
12  notably, not Metzler itself – states that Metzler is "attorney-in-fact" for each of its funds. *See*
13  Motion of the WAMU Investors Lead Plaintiff Group for Consolidation, Preservation of Documents,
14  Appointment of Lead Plaintiff, and Approval of Selection of Lead Plaintiff's Choice of Counsel,
15  dated September 20, 2004, note 1. The issue that Metzler and its counsel have ignored, however, is
16  whether each of Metzler's clients who suffered losses has ***specifically authorized*** Metzler ***to file suit***
17  ***or make a lead plaintiff motion*** on its behalf in ***this*** case.[5] No such evidence has been provided.[6]

18        For the foregoing reasons, Metzler's reported losses of $367,623.92 should be disregarded
19  and the losses of the WAMU Group reduced accordingly.

---

[5] At the very least, Metzler should be required to present competent evidence that its clients know it is moving for lead plaintiff and that its clients have given it permission to claim their losses as its own.

[6] Metzler faces an additional issue as well. It is headquartered in and operates from Germany. Thus, German law governs Metzler's contracts with its clients. *See* Metzler Mem. at 1, n.1 (admitting that it is "a fund management company established pursuant to German investment law"). Consequently, in order to determine Metzler's authority with respect to its ability to seek lead plaintiff status based upon its clients' losses, and whether it has the ability to sue on behalf of those losses, the Court would be forced to interpret and apply German law.

MEMORANDUM IN FURTHER
SUPPORT OF THE MOTION OF CITY
OF PONTIAC FOR CONSOLIDATION,
APPOINTMENT AS LEAD PLAINTIFF
(CV-04-1693-Z)

Lerach Coughlin Stoia Geller Rudman & Robbins LLP
700 Fifth Avenue, Suite 5600, Seattle, WA 98104
Telephone: 206/749-5544 • Fax: 206/749-9978

- 7 -

### 2. South Ferry LP #2 Has Overstated Its Losses By At Least $35,000

South Ferry LP #2 [7] reports a loss of $100,000 on a single options purchase – the purchase of a call contract with a strike price of $42.50 per share on June 24, 2004 (four days before the end of the Class Period) which expired worthless two months later. South Ferry LP #2 claims that the entire purchase price of the options contract is its "loss." Yet, South Ferry LP #2 cites no authority for the proposition that losses attributable to the purchase of an options contract are the entire purchase price.

The proper loss calculation for an options transaction should be no different than that used by the WAMU Group for its stock transactions – the difference between the price paid for the security and the price of the security after the end of the Class Period disclosure. Here, the call options purchased by South Ferry LP#2 declined to a price of $0.35 per contract at the end of the Class Period. Utilizing these figures, South Ferry LP #2's losses are reduced to $65,000, thereby further reducing the losses of the WAMU Group.

### 3. Walden Management Has Overstated Its Losses By Approximately $25,000

Finally, the losses claimed by Walden Management are grossly overstated. A review of its certification indicates that Walden Management's major purchase of 5,700 shares took place on January 5, 2004 at $43.78 per share. The trading range of Washington Mutual stock on that day was between $39.45 per share and $39.98 per share, well below Walden Management's claimed purchase price of $43.78 per share. Indeed, Walden Management's claimed loss of $28,194.50 could fall to as

---

[7] South Ferry LP #2 should also be rejected from serving as a lead plaintiff because its certification is inadequate. The certification does not indicate what or who South Ferry LP #2 is or who signed the certification. The certification also lists Bull & Lifshitz as counsel to South Ferry LP #2 but there is no explanation provided for what happened to Bull & Lifshitz or what role they intend to play in this case.

MEMORANDUM IN FURTHER
SUPPORT OF THE MOTION OF CITY
OF PONTIAC FOR CONSOLIDATION,
APPOINTMENT AS LEAD PLAINTIFF
(CV-04-1693-Z)

Lerach Coughlin Stoia Geller Rudman & Robbins LLP
700 Fifth Avenue, Suite 5600, Seattle, WA 98104
Telephone: 206/749-5544 • Fax: 206/749-9978

- 8 -

low as $3,513.50 (using the low trading price of the day). Thus, the WAMU Group's losses should be reduced by approximately $25,000 -- the amount of Walden Management's overstatement.

### 4. The Signatories on Metzler's Certification Have Not Demonstrated That They Have the Authority to Bring Suit on Behalf of Metzler

Messrs. Matthias Plewnia and Thomas Hess, who signed the certification on behalf of Metzler, have failed to demonstrate that they have the authority to bring suit or to seek lead plaintiff appointment on behalf of Metzler. Indeed, neither Mr. Plewnia nor Mr. Hess state what their roles are at Metzler, what their titles are, or if and how they have authority under German law to bind Metzler in this litigation. Thus, Metzler has also failed to adequately establish that it has properly authorized its involvement in this litigation.

Courts have refused to appoint movants where it is unclear whether the signatory on the movant's certification has the authority to bind the movant. *See Piven v. Sykes Enters.*, 137 F. Supp. 2d 1295, 1305 (M.D. Fla. 2000). In *Piven*, the company movant, like Metzler, failed to provide "any information regarding its identity, resources, and experience," but submitted only a document, signed by an unidentified individual on behalf of the movant company, that unremarkably claimed the company was "'willing to serve as a representative party and lead plaintiff on behalf of the class, including providing testimony at deposition and at trial, if necessary.'" *Id.* The court refused to appoint a movant that failed to demonstrate that the signatory had the authority to bind the movant.

Good reason exists for not appointing a movant based on a certification signed by a person without authority to bind the movant. The consequences to the class can be dramatic if the movant later withdraws because it had no intention to move for lead plaintiff appointment. For example, in *In re Pre-Paid Sec., Inc. Litig.*, CIV 01-182-C, slip op. (W.D. Okla. May 15, 2001) (Driscoll Decl., Ex. A), a lead plaintiff motion was made on behalf of an investment advisor, like Metzler. The person who signed the certification, however, did not have the authority to bind the company. Consequently, later in the proceedings, Robert Poole, the investment advisor's Chairman (Bricoleur Capital Management ("Bricoleur")) withdrew Bricoleur's motion for appointment as lead plaintiff

MEMORANDUM IN FURTHER
SUPPORT OF THE MOTION OF CITY
OF PONTIAC FOR CONSOLIDATION,
APPOINTMENT AS LEAD PLAINTIFF
(CV-04-1693-Z)                           - 9 -

Lerach Coughlin Stoia Geller Rudman & Robbins LLP
700 Fifth Avenue, Suite 5600, Seattle, WA 98104
Telephone: 206/749-5544 • Fax: 206/749-9978

1  from appellate proceedings pending in the Tenth Circuit. Following the withdrawal, Mr. Poole made
2  clear that the investment advisor never intended to be involved in the litigation, stating that "'it was
3  never our firm's informed decision to participate in the first place.'" See *Lead Institutional Plaintiff*
4  *Withdraws From Litigation Against Pre-Paid Legal; Litigant Declares Its Participation Was*
5  *Unintentional and States Suit is Without Merit*, PR Newswire, Aug. 15, 2002, Driscoll Decl., Ex. B.
6  Thus, Metzler cannot be appointed because it has failed to demonstrate that the signatories on its
7  certification have the authority to bind Metzler.[8]

### C. The WAMU Group Is An Impermissible Grouping Of Unrelated Investors And Is Therefore Inadequate And May Not Serve As Lead Plaintiff

10  The PSLRA clearly permits groups of persons or entities to be appointed Lead Plaintiff under
11 certain circumstances. See *In re Baan Co. Sec. Litig.*, 186 F.R.D. 214 (D.D.C. 1999). In particular,
12 movants should provide some evidence that they can operate as a cohesive group and direct the
13 litigation. *Id.*

14  Here, the WAMU Group has made no effort to demonstrate that they are a cohesive group
15 other than to submit a motion on their behalf. Nothing is provided that even remotely suggests that
16 the members of the so-called WAMU Group have ever spoken to each other or even know of each
17 other's existence. Under such circumstances, the WAMU Group cannot demonstrate that it is
18 adequate to represent the Class and its motion for appointment as Lead Plaintiff should be rejected.
19 See *Crawford v. Onyx Software Corp.*, 2002 U.S. Dist. LEXIS 1101, *4-*5 (W.D. Wash., Jan. 10,
20 2002) ("A loose group of investors whose relationship was forged only in an effort to win

---

[8]  Another reason to deny Metzler's motion is that unless the two signatories on Metzler's certification can provide some form of written authorization demonstrating their authority to sign on behalf of Metzler, which they have not done, then Metzler has failed to provide a properly signed certification. See *Chill v. Green Tree Fin. Corp.*, 181 F.R.D. 398, 410 (D. Minn. 1998) ("the overall statutory scheme requires any Lead Plaintiff Motion to be accompanied by certifications, which attest, on each applicants' behalf, to his or her eligibility as enunciated in Section 78u-4(a) (2)(A)").

MEMORANDUM IN FURTHER
SUPPORT OF THE MOTION OF CITY
OF PONTIAC FOR CONSOLIDATION,
APPOINTMENT AS LEAD PLAINTIFF
(CV-04-1693-Z)                            - 10 -

Lerach Coughlin Stoia Geller Rudman & Robbins LLP
700 Fifth Avenue, Suite 5600, Seattle, WA 98104
Telephone: 206/749-5544 • Fax: 206/749-9978

1 appointment as lead plaintiff has no real cohesiveness, is less likely to be in control of the litigation, and is subject to all of the obstacles that normally make group action difficult.")

### D. Metzler Does Not Otherwise Meet the Requirements of Rule 23 Because It Is A Foreign Investment Advisor Subject to Unique Defenses

Metzler cannot be appointed as lead plaintiff because, in addition to having no losses of its own, it cannot satisfy the requirements of Rule 23. Defendants will claim Metzler is subject to unique defenses in light of the fact that it is organized in and operates from Germany, and "it is highly unlikely that a German court would recognize as binding against those German shareholders any judgment entered in a U.S. class action. . . ." (Decl. of Rolf Sturner, Professor of Law at the University of Freiberg, Germany), submitted in *In re DaimlerChrysler AG Sec. Litig.*, No. 00-993` (D. Del. Jan. 8, 2003), Driscoll Decl., Ex. C. If Metzler were appointed lead plaintiff, defendants would no doubt attempt to exploit, at the class certification stage, the fact that any judgment rendered by this Court would not be *res judicata*, and that courts regularly refuse to certify classes when they are represented by foreign plaintiffs from countries that do not recognize "opt-out" class action judgments. *Bersch*, 519 F.2d at 995; In *re Royal Ahold N.V. Sec. ERISA Litig.*, 219 F.R.D. 343, 352 (D. Md. 2003). In *Bersch*, a securities class action, the court refused to certify a class containing foreign plaintiffs because countries of plaintiffs' origins, ***including Germany***, "would not recognize a United States judgment in favor of the defendant as a bar to an action by their own citizens, even assuming that the citizens had in fact received notice that they would be bound unless they affirmatively opted out of the plaintiff class." *Id.* at 996.

Similarly, in *Ansari v. New York University*, 179 F.R.D. 112 (S.D.N.Y. 1998), the court considered the *res judicata* effect of a class action judgment in a foreign plaintiff's home country in denying class certification. The court reasoned that "[i]f the foreign court would refuse to recognize the preclusive effect of such an action, this fact, although not dispositive, counsels against a finding that the class action is superior to other forms of litigation." *Id.* at 116.

MEMORANDUM IN FURTHER
SUPPORT OF THE MOTION OF CITY
OF PONTIAC FOR CONSOLIDATION,
APPOINTMENT AS LEAD PLAINTIFF
(CV-04-1693-Z)

- 11 -

Lerach Coughlin Stoia Geller Rudman & Robbins LLP
700 Fifth Avenue, Suite 5600, Seattle, WA 98104
Telephone: 206/749-5544 • Fax: 206/749-9978

## III. CONCLUSION

For all the reasons stated herein, the City of Pontiac respectfully requests that the Court grant its motion and appoint it as Lead Plaintiff and approve its selection of Lead Counsel

DATED: October 4, 2004

LERACH COUGHLIN STOIA GELLER
RUDMAN & ROBBINS LLP
TAMARA J. DRISCOLL, WSBA #29212


s/Tamara J. Driscoll
TAMARA J. DRISCOLL

700 Fifth Avenue, Suite 5600
Seattle, WA 98104
Telephone: 206/749-5544
206/749-997 (fax)

LERACH COUGHLIN STOIA GELLER
RUDMAN & ROBBINS LLP
SAMUEL H. RUDMAN
DAVID A. ROSENFELD
MARIO ALBA, JR.
200 Broadhollow Road, Suite 406
Melville, NY 11747
Telephone: 31/367-7100
631/367-1173 (fax)

LERACH COUGHLIN STOIA GELLER
RUDMAN & ROBBINS LLP
WILLIAM S. LERACH
DARREN J. ROBBINS
401 B Street, Suite 1700
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)

[Proposed] Lead Counsel for Plaintiffs

C:\Documents and Settings\change\Desktop\Washington Mutual Filing\Doc 1 (Response).doc

MEMORANDUM IN FURTHER
SUPPORT OF THE MOTION OF CITY
OF PONTIAC FOR CONSOLIDATION,
APPOINTMENT AS LEAD PLAINTIFF
(CV-04-1693-Z)

Lerach Coughlin Stoia Geller Rudman & Robbins LLP
700 Fifth Avenue, Suite 5600, Seattle, WA 98104
Telephone: 206/749-5544 • Fax: 206/749-9978

- 12 -